766 P.2d 1275

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Juan SANCHEZ, Defendant–Appellant.**

No. 17387.

Court of Appeals of Idaho.

Dec. 28, 1988.

hold that the sentences do not represent an abuse of discretion and we affirm for the following reasons.

Pursuant to plea negotiations, Sanchez pled guilty to attempted robbery and aggravated battery. The crimes occurred on June 19, 1987, making them subject to the Unified Sentencing Act of 1986. The district court imposed maximum concurrent sentences, fifteen years, for each crime. Because Sanchez used a firearm in committing aggravated battery, the court extended the aggravated battery sentence for an additional fifteen years, as permitted by I.C. § 19–2520. For each crime the sentencing judge specified that the minimum term of confinement would be the entire length of the sentence. I.C. § 19–2513. Under these sentences Sanchez must spend thirty years in confinement without the possibility of parole.

The terms imposed here are lawful, being at or within the maximum length of confinement authorized by statute. I.C. §§ 18–908, 18–6503, 18–306 and 19–2520. A sentence within the statutory maximum will not be disturbed unless an abuse of discretion is shown. A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). Here, because the crimes occurred after Idaho's "good time" statute (I.C. § 20–101A) was amended in 1986, Sanchez will not be entitled to any automatic "good time" reduction of the sentences. *See, e.g., State v. Amerson*, 113 Idaho 183, 742 P.2d 438 (Ct.App.1987). Moreover, because the judge specified that the minimum term of confinement would be the entire length of the sentence, thirty years is the term of confinement for the purpose of appellate review. Therefore, applying the familiar criteria found in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we must determine whether a thirty-year period of confinement is reasonable when viewed in light of the nature of the offense and the character of the offender.

The attempted robbery occurred when Sanchez, who was armed with a shot-

Jeff M. Brudie of Knowlton & Miles, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Juan Sanchez appeals from a judgment of conviction imposing concurrent maximum sentences for attempted robbery and aggravated battery. The sole issue is whether the sentences are excessive. We

gun, entered a Lewiston, Idaho, convenience store with some cohorts and demanded the clerk to get behind the counter, mentioning something about a "robbery." The aggravated battery occurred when Sanchez discharged his shotgun into the store clerk's abdomen. The clerk fortunately survived, but she was severely maimed and scarred. Sanchez and his cohorts fled the store, apparently without removing any money or property.

According to the presentence investigation report, Sanchez has been convicted of at least five prior felonies, including assault with a deadly weapon, burglary, theft and murder. The present conviction and Sanchez's criminal history reflect that he has little respect or regard for persons or property. Sanchez has been allowed parole three times in Texas and has violated it each time. At the time the present offenses occurred, Sanchez had absconded from parole for the murder conviction in Texas.

Sanchez contends his sentence is excessive because it provides no opportunity for his rehabilitation. The following excerpt from the transcript of the sentencing hearing shows this factor was given its due weight.

I've been a Judge not quite three years and my exposure to the criminal law during that period of time has not been all that extensive. But with perhaps one other exception, this is the most outrageous act by one person towards another person that I have had the sad duty to deal with.

Yes, rehabilitation is one of the goals of sentencing. [Defense counsel] has asked that in structuring a sentence I not lose sight of that goal. But rehabilitation is but one of four sentencing goals. And the most appropriate goal here is that which has been recognized for some time in this State. The primary consideration is the good order and protection of society.

If I felt that Mr. Sanchez really regretted what had occurred, if I felt he was taking responsibility for what happened to [the victim], I would perhaps give greater weight to the goal of rehabilitation. But, of course, he's taken a life once before in Texas and it was, according to Mr. Sanchez, self-defense. And but for the grace of God, but for the expert care given [the victim] by her doctors and nurses and but for [the victim's] grit and tenacity and desire to live, Juan Sanchez would have taken a second life. And to the extent possible this Court is going to structure a sentence that will at least protect people on the outside in free society from the very real possibility that Juan Sanchez may take or attempt to take another life.

As [defense counsel] said, for whatever reason the State of Texas saw fit to parole Mr. Sanchez in a relatively early time following his murder conviction.... And I'm structuring a sentence so that I'm not going to take the chance that somebody on the Board of Correction might in all good faith make a bad decision as the Texas people made.

This case just cries out for the defendant being warehoused.

We find no abuse of the sentencing court's discretion.

By upholding the sentences in this case, we do not suggest that it is generally wise to eliminate the indeterminate segment of a sentence under the Unified Sentencing Act. The indeterminate segment serves two purposes. First, it provides some incentive for the prisoner to behave properly and to make rehabilitative progress in the hope of obtaining an eventual release on parole. Second, it affords the state an opportunity to monitor and to control the prisoner's transition back into the community. This second purpose is often overlooked in discussions of correctional policy because parole is misperceived as a form of leniency for the criminal. To the contrary, parole is an important tool for enhancing public safety, and minimizing the risk of recidivism, during the critical period following release from prison.

Unless a sentence imposes the death penalty, or requires confinement for life, the prisoner will be released someday. The chances of successful reintegration into so-

ciety are greatest if the individual is monitored and controlled through the parole system. Conversely, a high risk of failure is created when an individual is confined until the last day of his sentence and then is thrust back into the community without supervision.

■ In the present case, the announced goal of protecting society could have been fully served—indeed, might have been better served—if the last year or two of the thirty-year extended term had been made indeterminate. Nevertheless, the mere fact that a sentence might be improved, in an appellate court's view, does not mean that the sentence was improper. The judge gave this case careful consideration, arriving at an outcome which was within the bounds of his discretion.

Accordingly, the judgment imposing the sentences is affirmed.

WALTERS, C.J., and BURNETT, J., concur.